Affirmed as Reformed and Memorandum Opinion filed July 1, 2008








Affirmed as Reformed and Memorandum Opinion filed July 1,
2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00879-CR

____________

 

TYREE JACK JONES, II, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 230th
District Court

Harris County, Texas

Trial Court Cause No. 1053945

 



 

M E M O R A N D U M   O P I N I O N








Appellant Tyree Jack Jones, II, was found guilty of felony
murder and sentenced to thirty-eight years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  On appeal,
appellant raises eight issues: (1) whether the underlying charged driving while
intoxicated (ADWI@) offense was appropriately considered a
felony under Texas Penal Code section 49.09; (2) whether the trial court erred
in denying his motion to quash the indictment because it failed to allege a
culpable mental state; (3) whether the trial court erred in denying his motion
to quash because the felony murder and intoxication manslaughter statutes are
in pari materia; (4) whether his punishment violates equal protection; (5)
whether the evidence is factually sufficient to support the jury=s verdict; (6)
whether the evidence is legally sufficient to support the jury=s verdict; (7)
whether the trial court erred in denying his motions to suppress evidence; and
(8) whether the trial court=s judgment includes an incorrect entry
that appellant used a Afirearm@ during the
commission of the offense.  We find no merit in appellant=s first seven
issues, sustain his eighth issue in which appellant requests this court to
reform the trial court=s judgment, and we affirm the judgment as
reformed.

Factual
Background

On January 15, 2006, appellant and his friend, Rene
Peralez, spent the afternoon and evening drinking and driving to various
locations.  Around 11:00 p.m., appellant decided to drive home from Peralez=s house.  Peralez
tried to convince appellant to stay the night because appellant appeared
intoxicated, but appellant refused.  Appellant got in his Chevrolet Silverado
pickup truck and drove away from Peralez=s house, even
though he had at least two prior DWI convictions.

The weather was clear and the roads were dry as appellant
drove north on Highway 249 toward the intersection of Highway 249 and
Holdereith.  At the intersection, five vehicles were stopped at a red light on
Highway 249, waiting for the light to change.  The fifth car in the line of
cars was a Lexus driven by Sandy Laine.  Laine=s 80-year-old
mother, Rita Gervais, was seated in the back seat on the driver=s side.  Gervais
always sat in the back seat because the air conditioning was too cool in the
front.  She also did not wear a seat belt, because she was very short and it
was uncomfortable for her.








As Laine waited for the light to change, appellant=s pickup truck
smashed into the back of her Lexus.  At the time of the crash, the light was
still red.  Appellant=s truck was traveling at approximately
fifty-five miles per hour at the time it collided with Laine=s car; there was
no braking, and the force of the truck crushed together all six of the
vehicles.  The truck traveled an additional fifty feet after striking Laine=s car as it pushed
each vehicle in line into the next.  

The force of the crash caused Laine to lose consciousness. 
Gervais=s head struck the
door framing on the side of the car, causing her to sustain several serious
injuries, including a gaping laceration across her forehead, extensive skull
fractures, and bleeding around her brain.  The force of the crash also tore her
aorta, fractured her vertebrae, and dislocated her femur.  These injuries
caused Gervais=s death.  

The driver of the car in front of Laine=s car, Gary Fly,
may have been knocked unconscious by the collision, because the next thing he
remembered after the collision was an ambulance at the scene.  Fly=s car was so
damaged that he could not drive it home.  The force of the collision propelled
the second car in line, driven by George Reynolds, into the first car, despite
the fact that Reynolds=s foot was on the brake.  Reynolds=s car was
totaled.  The driver of the first car, Debra Enlow, and her daughter, Aflew forward and
back@ in their
seatbelts, and her car sustained damage in the rear.[1]

When Laine regained consciousness, she turned to check on
Gervais and saw her lying on the floor of the car.  Laine tried to get out of
the car to help her mother, but she was unable to open the door.  She then
climbed over the center console and got out through the passenger side door. 
She realized that her shoes had Ablown off@ her feet, and
there was glass everywhere.  The back of Laine=s head was cut,
her fingernails were broken, and her arm was cut.  Police and ambulance
personnel arrived and began assisting Gervais.  








Officer Rick Garza with the Tomball Police Department was
one of the police officers who arrived at the scene.  He saw that all six cars
were involved in the wreck, and all of the drivers of the vehicles were present
except for appellant.  Garza learned that the Silverado pickup truck was
registered to Brandy Jones, appellant=s wife.  A name
tag with appellant=s name on it was found in the truck. 
There was also an empty bottle of vodka in the bed of the truck.  The airbags
had deployed, and there was blood on the driver=s side airbag. 
There was also blood on the driver=s side door and
along the outside rear of appellant=s truck,
indicating that the driver may have run into a vacant field on the corner of
Holdereith and Highway 249.  DNA testing on the blood samples confirmed that
the blood came from appellant.

Tomball Police requested a canine unit from the Harris
County Sheriff=s Department, and the officers started looking for the
driver of the truck when Deputy Connie Anderson and her dog ABeleuw@ arrived at 12:15
a.m.  Beleuw first took the officers around a large dirt pile on the side of
the road to a large pool of blood.  He then located a second pool of blood, and
after Anderson and Beleuw searched some nearby buildings, they returned to the
second pool of blood, where Beleuw resumed tracking appellant.  Beleuw
eventually found appellant lying still in a ditch.  Appellant=s face and
clothing were bloody, his speech was slurred, and he had a strong odor of
alcohol on him.  

Appellant was arrested at 1:53 a.m. and taken to a nearby
hospital, where he told hospital personnel that he had been in a fight.  The
hospital staff drew blood for treatment purposes at around 3:00 a.m., and it
showed an alcohol concentration of 0.26.  

Meanwhile, Gervais was taken by a Life Flight helicopter to
the same hospital.  Laine was also brought to the same hospital, where she
repeatedly asked to see her mother.  When Laine eventually was told that her
mother was dead, she started screaming.  Appellant, who was nearby, heard Laine=s screams and
asked, AWhat is that
ungodful noise?@[2]  

Officer Garza met appellant at the hospital and conducted a
mandatory blood draw on him.  The blood from the mandatory draw was taken at
5:02 a.m. and showed an alcohol concentration of 0.20.  A toxicologist from the
Harris County Medical Examiner=s Office testified that, at the time of
the crash, appellant=s blood alcohol concentration would have
been 0.32, which was four times the legal limit.








Analysis
of Appellant=s Issues

I.        Whether
the Underlying Charged DWI Offense was Appropriately Considered a Felony Under
Texas Penal Code Section 49.09.

In his first issue, appellant contends that his third DWI
offense was not a felony until it was proved at the time of trial that it was a
felony; therefore, when he actually committed the offense, it had not yet been
proved that he had committed a felony.  As support for this theory, appellant
cites the highlighted language of the following subsection of the Texas Penal
Code:

(b) An offense under Section 49.04 . . . is a felony of the third
degree if it is shown on the trial of the offense that the person has
previously been convicted . . .

(2) two times of
any other offense relating to the operating of a motor vehicle while
intoxicated, operating an aircraft while intoxicated, operating a watercraft
while intoxicated, or operating or assembling an amusement ride while
intoxicated.

Tex. Penal Code ' 49.09(b)(2)
(emphasis added).  Because the underlying offense had not been proven to be  a
felony at the time of the collision resulting in Gervais=s death, appellant
urges, he cannot legally be convicted of felony murder.

Appellant filed a motion to quash the indictment in which
he claimed that the indictment failed to allege a culpable mental state and
violated the merger doctrine.  After a hearing, the trial court denied the
motion.  Appellant never argued to the trial court that the indictment should
be dismissed because the DWI offense with which he was charged does not become
a felony until the prior DWI convictions are proved at trial.  Therefore, he
has not preserved this issue for appellate review.  See Heidelberg v. State,
144 S.W.3d 535, 537 (Tex. Crim. App. 2004).








Even if appellant had preserved the issue, it would be
without merit.  The statutory language appellant relies upon provides that an Aoffense under
Section 49.04 . . . is a felony of the third degree if it is
shown on the trial of the offense that the person has previously been convicted
[two times of DWI].@  Tex.
Penal Code ' 49.09(b)(2) (emphasis added).  The
statute does not provide that DWI becomes a felony only when it is shown
that the suspect had two prior DWI convictions; it provides that the offense is
a felony.  Thus, the felony is committed and completed when the suspect
drives while intoxicated while having two prior DWI convictions.  It is not
completed months later at trial when those prior DWI convictions are actually
proven.  Additionally, we note that the prior convictions are elements of the
offense of felony murder just like the operation of a motor vehicle and the
intoxication elements.  See Robles v. State, 85 S.W.3d 211, 213 (Tex.
Crim. App. 2002) (AProof of the convictions is necessary in
that the prior convictions are elements of felony DWI.@).  The fact that
they have not yet been proven does not alter the nature of the offense.  We
overrule appellant=s first issue.

II.       Whether
Appellant=s Motion to Quash Should Have Been
Granted Because the State Failed to Allege a Culpable Mental State in the
indictment.

In his second issue, appellant contends that the trial
court erred in denying his motion to quash the felony murder indictment because
the State failed to allege a culpable mental state.  However, the Court of
Criminal Appeals recently settled this issue against him.  In Lomax v. State,
233 S.W.3d 302 (Tex. Crim. App. 2007), the appellant was charged with felony
murder based on a felony DWI, and he claimed that the felony murder statute
required a culpable mental state.  Id. at 304.  Examining the issue at length,
the Court stated the following:

[D]eciding that Section 19.02(b)(3)
[the felony murder statute] dispenses with a culpable mental state is
consistent with the historical purpose of the felony-murder rule, the very
essence of which is to make a person guilty of an Aunintentional@ murder when he
causes another person=s death during the commission of some type
of a felony . . . We hold that Section 19.02(b)(3) plainly dispenses with a
culpable mental state.  

Id. at 305 (citations
omitted).  We overrule appellant=s second issue.








III.      Whether
Appellant=s Motion to Quash Should Have Been
Granted Because the Felony Murder and Intoxication Manslaughter Statutes are in
Pari Materia.

In his third issue, appellant contends that the trial court
erred in denying his motion to quash the indictment because it violated the in
pari materia doctrine.  The in pari materia doctrine is a rule of
statutory construction for determining which statutory provision controls when
a general statutory provision and a more specific statutory provision deal with
the same subject matter and they irreconcilably conflict.  Ex parte Smith,
185 S.W.3d 887, 889 n.5 (Tex. 2006).  The doctrine has been codified in section
311.026 of the Government Code:

' 311.026. Special or Local Provision Prevails Over
General

(a) If a general provision conflicts with a special
or local provision, the provisions shall be construed, if possible, so that
effect is given to both.

(b) If the
conflict between the general provision and the special or local provision is
irreconcilable, the special or local provision prevails as an exception to the
general provision, unless the general provision is the later enactment and the
manifest intent is that the general provision prevail.

Tex. Gov=t Code ' 311.026.  Appellant argues that the
felony murder and intoxication manslaughter statutes are in pari materia,
and therefore the intoxication manslaughter statute, as the more specific
statute, governs his alleged criminal act.

As an initial matter, the State contends that appellant
failed to preserve this issue because he did not raise it in his motion to
quash.  However, under the heading AMerger Doctrine@ in appellant=s motion to quash,
appellant argued that he should have been charged with intoxication
manslaughter instead of felony murder, and that A[t]he State is
trying to ignore a specific statute while seeking a felony murder indictment.@  Therefore, we
conclude that appellant=s argument below was sufficient to
preserve the issue for appellate review. 








The doctrine of in pari materia applies if two
statutes share a common purpose or object.  See Burke v. State, 28 S.W.3d
545, 547 (Tex. Crim. App. 2000).  Similarity of purpose or object is the most
important factor in assessing whether two provisions are in pari materia; the
two provisions must have been enacted with the same purpose in mind for the
doctrine to apply.  Id.  To determine whether two statutes are in
pari materia, a court may consider whether (1) the two statutes are
contained in the same legislative act; (2) the same elements of proof are
required by the two statutes; (3) they involve different penalties; and (4)
they were designed to serve the same purpose and objective.  See id. 

Appellant concedes that the two statutes were not passed in
the same legislative act and do not require the same elements of proof, but
contends that the last two factors identified in Burke fall in his
favor.  However, the Court of Criminal Appeals rejected similar arguments in
the recent Lomax opinion.  In that case, the dissenting opinion adopted
the same argument appellant makes on appealCthat felony murder
based on felony DWI must be prosecuted as intoxication manslaughter.  See
Lomax, 233 S.W.3d at 313B15 (Johnson, J., dissenting).  However,
the majority disagreed, noting that felony murder and intoxication manslaughter
Aobviously cover
different situations and apparently were not intended to be considered
together. . . . The felony-murder statute covers a variety of homicides during
the commission of a felony while the intoxication manslaughter statute is
specifically limited to a DWI homicide.@  Id. at
312.  

We follow the holding of the Court of Criminal Appeals in
concluding that the felony murder statute and the intoxication manslaughter
statute are not in pari materia.  See also Hollin v. State, 227
S.W.3d 117, 122 (Tex App.CHouston [1st Dist.] 2006, pet. ref=d) (concluding
that the felony murder and intoxication manslaughter statutes are not in
pari materia because the two statutes do not satisfy the Burke
criteria); Strickland v. State, 193 S.W.3d 662, 665B69 (Tex. App.CFort Worth 2006,
pet. ref=d) (same).  We
therefore overrule appellant=s third issue.








IV.      Whether
Punishing Appellant as a First-Degree Felon While Others Committing
Intoxication Manslaughter are Punished as Second-Degree Felons Violates Equal
Protection.

In his fourth issue, appellant contend the State is
punishing him as a first degree felon for a conviction for felony murder, while
others who commit the same act are punished as second-degree felons for an
intoxication manslaughter conviction, and this application of the law violates
equal protection as provided by the United States and Texas Constitutions. 
However, appellant failed to argue in the trial court that prosecution for
felony murder violated his constitutional right to equal protection under the
law.  Therefore, he has failed to preserve the issue for appellate review.  See
Saldano v. State, 70 S.W.3d 873, 889B91 (Tex. Crim.
App. 2002) (holding that many constitutional rights, including equal
protection, may be forfeited by failing to object); Hull v. State, 67
S.W.3d 215, 216B18 (Tex. Crim. App. 2002 (holding that
defendant failed to preserve due process claim when raised for first time on
appeal).  We overrule appellant=s fourth issue.

V.      Whether the
Evidence is Legally Sufficient to Prove Appellant Caused Gervais=s Death While
Driving Drunk.

In his sixth issue, appellant contends that the evidence is
legally insufficient to prove that he caused the complainant=s death while
driving drunk.  Specifically, he contends that the State failed to prove that
he was the driver of the pickup truck and, if he were the driver, that his
actions were the legal cause of Gervais=s death.  Although
appellant reasserts the arguments he makes in his fifth issue, in which he
contends that the evidence is factually insufficient, we address his legal
sufficiency issue first, because an affirmative finding on this issue would
result in a rendition of a judgment of acquittal, while a finding of factual
insufficiency would result in a remand for a new trial.  See Hartis v. State,
183 S.W.3d 793, 803 (Tex. App.CHouston [14th Dist.] 2005, no pet.).








A.      Standard
of Review

In addressing legal sufficiency complaints, we consider all
the evidence in the light most favorable to the verdict and determine whether,
based on that evidence and reasonable inferences therefrom, a rational fact
finder could have found the essential elements of the crime beyond a reasonable
doubt.  Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  The jury, as sole judge
of the witnesses= credibility and the weight to be given
their testimony, is free to accept or reject any or all of the evidence
presented by either side.  See Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000).  We must give deference to the responsibility of the
jury to fairly resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.  Hooper,
214 S.W.3d at 13. 

Evidence can be both legally and factually sufficient for a
conviction even if it is entirely circumstantial.  See King v. State, 29
S.W.3d 556, 565 (Tex. Crim. App. 2000).  The standard of review for
circumstantial and direct evidence is the same.  Id.  It is not
necessary that every fact point directly and independently to the defendant=s guilt; it is
enough if the conclusion is warranted by the combined and cumulative force of
all the incriminating circumstances.  Johnson v. State, 871 S.W.2d 183,
186 (Tex. Crim. App. 1993).

B.      Legal
Sufficiency








A person commits the offense of felony murder if the person
commits or attempts to commit a felony other than manslaughter and, in the
course of and in furtherance of the commission or attempt, he commits or
attempts to commit an act clearly dangerous to human life that causes the death
of an individual.  Tex. Penal Code
' 19.02.(b)(3). 
Under Texas Penal Code section 49.04, a person commits the offense of DWI if
the person is intoxicated while operating a motor vehicle in a public place.  Tex. Penal Code ' 49.04.[3] 
The offense is elevated to a felony if the person has previously been convicted
at least twice for DWI.  Id. ' 49.09(b)(2). 
Here, the State alleged in the indictment that appellant caused Gervais=s death by
speeding and failing to take evasive action while in the course of committing a
DWI and while having two prior DWI convictions.  

Appellant first claims that the evidence is legally
insufficient to show that he was actually driving the truck at the time of the
collision.  He contends that there is a Areasonable
alternative hypothesis@ that Peralez was driving the truck, and
even if appellant was in the truck at the time of the collision, he could have
been on the passenger side.  Appellant points to the blood found on the
passenger side of the pickup and the fact that the passenger side airbag
deployed as evidence indicating someone was likely sitting on the passenger side. 
Appellant also asserts that the pattern of blood evidence in the truck shows
that he could not exit through the passenger door and had to get out of the
truck through the driver=s side door, and that Peralez also exited
through that door and went to his home nearby.[4]








However, although there was no direct testimony that
appellant was operating the vehicle, ample circumstantial evidence supports the
jury=s finding.  The
truck was registered to appellant=s wife, and his
personal effects, including his name tag, were inside the truck.  Peralez
testified that he saw appellant driving the truck in the direction of the
collision just a few minutes before it happened.  Further, DNA tests on all of
the blood taken from the various locations where it was found on the truck
confirmed that the blood was appellant=s.[5] 
Finally, a tracking dog followed appellant=s scent from the
scene to the ditch where he was found with injuries consistent with such a
collision.  This evidence is sufficient to show that appellant was operating
the vehicle at the time of the crash.  See Ramirez v. State, Nos.
01-05-00383-CR, 01-05-00384-CR, 2006 WL 1549750, at *3 (Tex. App.CHouston [1st
Dist.] June 8, 2006, no pet.) (mem. op., not designated for publication)
(holding circumstantial evidence legally sufficient to show that appellant was
driver when his passenger was bleeding, but there was no blood on driver=s side airbag and
blood inside car did not match appellant=s DNA); Freeman
v. State, 69 S.W.3d 374, 376 (Tex. App.CDallas 2002, no
pet.) (holding circumstantial evidence showed defendant operated vehicle when
defendant started the vehicle, turned the lights on, shifted the gear to drive,
ran the vehicle into the curb, and fell asleep at the wheel).  Further, there
is no evidence to support appellant=s contention that
Peralez could have been the driver.

Appellant next claims that, although he may have initiated
the chain of causation, Gervais=s failure to wear her seatbelt ultimately
caused her death.  Appellant points out that everyone else involved in the
collision was wearing a seatbelt, and none of them sustained serious injuries. 
Further, appellant contends that photographs of the Lexus show the passenger
compartment was relatively intact, indicating Gervais would not have been
seriously injured if she had used her seatbelt.  Appellant also notes the
medical examiner=s acknowledgment that, in other cases,
people properly restrained have walked away from accidents.  Therefore,
appellant posits, a reasonable fact finder would conclude that Gervais=s death would not
have occurred but for her failure to wear a seatbelt. 

Section 6.04(a) of the Texas Penal Code provides that a Aperson is
criminally responsible if the result would not have occurred but for his
conduct, operating either alone or concurrently with another cause, unless the
concurrent cause was clearly sufficient to produce the result and the conduct
of the actor was clearly insufficient.@  Tex. Penal Code ' 6.04(a).  The
existence or nonexistence of such a causal connection is normally a question
for the jury=s determination.  Dorsche v. State, 514 S.W.2d
755, 757 (Tex. Crim. App. 1974); Hale v. State, 194 S.W.3d 39, 42 (Tex.
App.CTexarkana 2006, no
pet.).








The Texas Court of Criminal Appeals has held that the Abut for@ causal connection
in section 6.04(a) must be established between the defendant=s conduct and the
resulting harm.  Robbins v. State, 717 S.W.2d 348, 351 (Tex. Crim. App.
1986).  If concurrent causes are present, two possible combinations exist to
satisfy the Abut for@ requirement:  (1)
the defendant=s conduct may be sufficient by itself to have caused
the harm, regardless of the existence of a concurrent cause; or (2) the
defendant=s conduct and the other cause together may be
sufficient to have caused the harm.  Id.  However, section 6.04(a)
further defines and limits the Abut for@ causality for
concurrent causes by the last phrase, Aunless the
concurrent cause was clearly sufficient to produce the result and the conduct
of the actor clearly insufficient.@ Id. If the
additional cause, other than the defendant=s conduct, is
clearly sufficient, by itself, to produce the result and the defendant=s conduct, by
itself, is clearly insufficient, then the defendant cannot be convicted.  Id.








Applying section 6.04(a) to the facts of this case,
appellant is criminally responsible because his conduct and the other causeCGervais=s failure to wear
her seat beltCtogether were sufficient to cause her death, and
Gervais=s conduct alone
was not sufficient to cause her death.  The evidence showed that, at the time
of the collision, appellant was intoxicated; he was traveling approximately
fifty-five miles per hour toward an intersection where five other cars were
stopped waiting for a red light to change; he failed to apply his brakes or
take any evasive action as he approached the line of cars, even though the
weather was clear and dry and the traffic light was clearly visible; and the
injuries Gervais sustained when she was thrown from her seat and struck the
interior of the Lexus caused Gervais=s death.  Gervais=s conductCnot wearing a seat
beltCclearly was not
sufficient by itself to cause the result, i.e., her death.  Considering these
facts, a rational jury could have found, beyond a reasonable doubt, that
appellant=s impairment caused the accident in which Gervais was
killed.  See Serrano v. State, No. 14-05-00646-CR, 2007 WL
324606, at *2 (Tex. App.CHouston [14th Dist.] Feb. 6, 2007, no
pet.) (mem. op, not designated for publication) (holding legally sufficient
evidence supported finding that accident was caused by appellant=s impairment when
he was intoxicated and drinking while driving, he drove in excess of
seventy-five miles per hour on a wet road, and he drove into a ditch before he Ajerked@ the car back onto
the roadway); see also Garcia v. State, 112 S.W.3d 839, 853B54 (Tex. App.CHouston [14th
Dist.] 2003, no pet.) (finding evidence that appellant=s intoxication
caused death when there was evidence that appellant was intoxicated while
driving, hit the reflectors in the road as he approached complainant, drove in
excess of the posted speed, and had a slow reaction time as evidenced by the
length of skid marks); Glauser v. State, 66 S.W.3d 307, 313 (Tex. App.CHouston [1st
Dist.] 2000, pet. ref=d) (finding legally sufficient evidence
that appellant=s intoxication caused death when there was evidence
that appellant drove thirty-five miles per hour above posted speed, hit
complainant in a well-lit area without applying the brakes, and was intoxicated
while driving).  We therefore overrule appellant=s sixth issue.

VI.      Whether the
Evidence is Factually Sufficient to Prove Appellant Caused Gervais=s Death While
Driving Intoxicated.

In his fifth issue, appellant contends that the evidence is
factually insufficient to support the jury=s verdict, because
the record fails to establish that he was the driver, and Gervais=s failure to wear
her seat belt caused her death.

A.      Standard
of Review

Evidence supporting guilt, though legally sufficient, may
be factually insufficient because it is so weak that the jury=s verdict is clearly
wrong and manifestly unjust, or because evidence contrary to the verdict is
such that the jury=s verdict is against the great weight and
preponderance of the evidence.  Marshall v. State, 210 S.W.3d 618, 625
(Tex. Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414B15 (Tex. Crim.
App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
In a factual  sufficiency review, we consider all the evidence in a neutral light. 
Marshall, 210 S.W.3d at 625; Watson, 204 S.W.3d at 414.  Although
our authority to review factual sufficiency permits us to disagree with the
jury=s determinations,
we must accord them due deference, particularly those determinations concerning
the weight and credibility of the evidence.  Johnson, 23 S.W.3d at 9. 








B.      Factual
Sufficiency

Appellant makes the same claims in both his legal and
factual sufficiency issues.  First, appellant claims that his Areasonable
alternative hypothesis@ that Peralez was driving the truck is
relevant to a factual sufficiency review because in Clewis v. State, 922
S.W.2d 126 (Tex. Crim. App. 1996), the Court of Criminal Appeals held that to
determine whether the evidence presented is factually sufficient, the reviewing
court should consider all of the evidence in a neutral light.  See id. at
129; see also Richardson, 973 S.W.2d at 386B87 (reviewing
post-Clewis cases involving factual-sufficiency challenges and
concluding that a factual sufficiency analysis necessarily considers any
reasonable alternative hypotheses raised by the evidence, because the very
nature of a factual-sufficiency review requires the court to consider all the
evidence presented at trial).  However, in Wilson v. State, 7 S.W.3d
136, 141 (Tex. Crim. App. 1999), the Court of Criminal Appeals stated that Athe existence of
alternative reasonable hypotheses may be relevant to, but are not determinative
in, a factual review.@  Further, the Court of Criminal Appeals
has since held that an appellate court must first be able to say, with some
objective basis in the record, that Athe great
weight and preponderance of the (albeit legally sufficient) evidence
contradicts the jury=s verdict@ before it is
justified in exercising its appellate fact jurisdiction to order a new trial.  Watson,
204 S.W.3d at 417 (emphasis in original).

In any event, it is unnecessary to consider the substance
of appellant=s argument, because, based upon our review of the
record, we find appellant=s alternative hypothesis to be unreasonable. 
As discussed above, there is no evidence to support the conclusion that Peralez
could have been the driver of the truck at the time of the collision. 
Moreover, appellant never argued this theory at trial.  Therefore, we hold that
this contention is without merit.








We also hold that the evidence is factually sufficient to
support the jury=s finding that appellant=s intoxication
caused Gervais=s death.  As discussed above, appellant pointed to
evidence that the others involved in the collision who were wearing their
seatbelts were not seriously injured, the medical examiner acknowledged that
seatbelts have prevented serious injuries in other cases, and photographs of
the Lexus=s passenger compartment to support his claim that, but
for Gervais=s failure to wear her seatbelt, she would not have died
from the collision.  However, the evidence also showed that appellant
stipulated to the two prior DWI convictions, his blood alcohol level was four
times the legal limit at the time of the collision, and he drove into a line of
cars while traveling approximately fifty-five miles per hour without applying
his brakes and without taking any sort of evasive action.  Having considered
the evidence offered by the State proving the causal link between appellant=s intoxication and
the resulting collision and the evidence cited by appellant, we cannot conclude
that Gervais=s failure to wear a seatbelt was clearly sufficient to
cause the accident or that appellant=s intoxication was
clearly insufficient.  See Tex.
Penal Code ' 6.04(a); Serrano, 2007 WL 324606,
at *3 (holding evidence of causation was factually sufficient despite testimony
that appellant did not appear intoxicated after accident, and accident was
caused by appellant striking a pothole in the roadway, it was raining, and
there was water in the road); Hale, 194 S.W.3d at 43B44 (holding that a
stopped or slow-moving car in the road was not clearly sufficient to be the
cause of the accident and that defendant=s intoxication was
not clearly insufficient); see also Martinez v. State, 66 S.W.3d
467, 469B70 (Tex. App.CHouston [1st
Dist.] 2001, pet. ref=d) (finding that the defendant=s driving while
intoxicated at a high rate of speed could not be considered clearly
insufficient to cause the accident despite the vehicle=s defective front
axle and faulty brakes).  Therefore, we cannot say that the evidence relative
to causation is so weak that the jury=s finding was
clearly wrong or manifestly unjust; nor can we say that the verdict is against
the great weight and preponderance of the evidence.  We overrule appellant=s fifth issue.

VII.     Whether
the Trial Court Erred in Denying Appellant=s Motions to
Suppress Evidence. 








In his seventh issue, appellant contends that the trial
court should have granted his motions to suppress evidence obtained from his
truck and evidence from medical records, including the results of blood
samples.  Specifically, appellant contends that it was not proven, at the time
the search warrant for the truck was issued, that he was the driver of the
vehicle.  In addition, he contends that evidence from his medical records and
blood samples were obtained in violation of his privacy rights and without his
consent. We review a trial court=s ruling on a
motion to suppress evidence under an abuse-of-discretion standard.  See Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); see also State v.
Ross, 32 S.W.3d 853, 855B56 (Tex. Crim. App. 2000) (discussing
appropriate level of appellate review).

Appellant filed two motions to suppress.  In the first, he
moved to suppress evidence seized from his truck, including all photographs,
tests on physical evidence, and testimony of any officers who observed the
physical evidence, based on a lack of probable cause for the search warrant. 
In the second, he moved to suppress his medical records, blood samples, and
statements to mental health workers in jail based on the Health Insurance
Portability and Accountability Act (AHIPAA@).  The trial
court held a hearing over two days, at which three police officers and a nurse
testified.  After the hearing, the trial court denied most of appellant=s requests, but
granted the motion to suppress as to certain of appellant=s statements made
to medical personnel.  The trial court did not file findings of fact.[6] 









On appeal, appellant first contends that evidence obtained
from his truck should be suppressed due to a lack of probable cause because the
officers did not have sufficient evidence to show that he was the driver at the
time the search warrant was obtained.  However, as noted above, there was
considerable circumstantial evidence at the scene that appellant was the driver
of the truck.  The drivers of all of the cars involved in the collision were
present except for the driver of the truck.  The truck=s airbag had
deployed and had blood on it, and a blood trail from the truck indicated that
the driver had fled.  The truck was registered to appellant=s wife, and a name
tag with appellant=s name on it was found inside.  An empty
bottle of vodka was found in the bed of the truck.  A canine unit later located
appellant laying in a ditch with blood on his face and clothing, his speech was
slurred, and he smelled of alcohol.  Further, a driver of one of the cars that
was damaged had seen the driver of the truck before he fled, and gave a
physical description that matched appellant.  The affidavit supporting the
search warrant included much of this evidence.  Therefore, we reject appellant=s argument that
the State lacked probable cause because there was insufficient evidence to show
he was the driver of the truck. 

Additionally, even if we accepted for purposes of appellant=s argument that
the affidavit was insufficient, the police officers could have searched the
vehicle without any warrant because they had probable cause to believe the
vehicle contained evidence of a crime.  See Chambers v. Maroney, 399
U.S. 42, 48B49 (1970); Powell v. State, 898 S.W.2d 821, 827
(Tex. Crim. App. 1994); Amos v. State, 819 S.W.2d 156, 160B61 (Tex. Crim.
App. 1991).  This Aautomobile exception@ to the
constitutional requirement of a warrant does not require the existence of
exigent circumstances in addition to probable cause.  See Michigan v. Thomas,
458 U.S. 259, 261B62 (1982); State v. Guzman, 959
S.W.2d 631, 634 (Tex. Crim. App. 1998).  








Here, officers at the scene knew that the truck had been
involved in a serious traffic collision involving multiple vehicles and at
least one seriously injured, dying, or dead person.  They saw the empty bottle
of vodka and the blood inside the cab of the truck.  From this evidence, the
officers would have had probable cause to believe that the driver had committed
at least the crime of reckless driving, if not negligent homicide or
intoxication manslaughter.  On the facts of this case, the officers would have
had probable cause to believe that the truck would contain evidence of any such
crimes.  See Wiede v. State, 214 S.W.3d 17, 26 (Tex. Crim. App. 2007) (AThe court of
appeals should not have eliminated the accident as a relevant fact and
circumstance in its probable cause analysis when reviewing the trial judge=s decision to deny
Wiede=s motion to
suppress.@).  Therefore, the trial court could have properly
denied the motion to suppress because officers did not need a warrant to search
the vehicle.

We also note that appellant affirmatively stated that he
had no objection to the admission of a DNA analysis which confirmed that it was
his blood on the driver=s side airbag and the truck.  Therefore,
to the extent appellant complains on appeal about the admission of this
evidence, he has failed to preserve any error in its admission despite the
pretrial ruling.  See Moody v. State, 827 S.W.2d 875, 889 (Tex. Crim.
App. 1992); Dean v. State, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988); see
also Heidelberg v. State, 36 S.W.3d 668, 672 n.2 (Tex. App.CHouston [14th
Dist. 2001, no pet.) (stating that Aif the defendant=s attorney
affirmatively states that he has no objection to the admissibility of the
evidence when it is subsequently introduced at trial, he waives the right to
complain of its admission on appeal.@).  By these
actions appellant waived this complaint.

Appellant next contends that statements in his medical
records were illegally obtained because the State did not comply with the
requirements of HIPAA.  See 45 C.F.R. ' 164.512
(providing for uses and disclosures of protected health information without the
written authorization of the individual or the opportunity for the individual
to agree or object). However, appellant acknowledges in his brief that
disclosure under HIPAA is permissible without an individual=s permission when
the information is disclosed for law enforcement purposes and is obtained
pursuant to 45 C.F.R. section 164.512(f)(1)(ii)(B), which permits disclosure of
such information in response to a grand jury subpoena.  Although appellant
contends that the State Adid not comply with the statutory
requirements,@ the State obtained appellant=s medical records
by a grand jury subpoena, which was admitted into evidence attached to
appellant=s medical records.  Therefore, appellant=s contention that
the State failed to comply with HIPAA=s requirements is
without merit.








Finally, appellant also complains that evidence from blood samples is
inadmissible because the State failed to comply with the mandatory blood draw
requirements, and the nurse took the samples at the direction of law
enforcement personnel without his consent in violation of his expectation of
privacy.  Appellant cites section 724.011 of the Texas Transportation Code,
entitled AConsent to Taking of Specimen,@ which provides as follows:                (a)
If a person is arrested for an offense arising out of acts alleged to have been
committed while the person was operating a motor vehicle in a public place, or
a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic
Beverage Code, the person is deemed to have consented, subject to this chapter,
to submit to the taking of one or more specimens of the person=s breath or blood for analysis to
determine the alcohol concentration or the presence in the person=s body of a controlled substance,
drug, dangerous drug, or other substance.

(b) A person
arrested for an offense described by Subsection (a) may consent to submit to
the taking of any other type of specimen to determine the person's alcohol
concentration.

Tex. Transp. Code ' 724.011. 
Appellant again argues that there was insufficient evidence that he was the
driver of the truck at the time of the blood draw.  However, as discussed
above, there was sufficient evidence from which to conclude appellant was the
driver at that time. 

Additionally, Section 724.012 of the Transportation Code,
entitled ATaking of Specimen,@ provides for the
taking of blood or other specimens in the following circumstances:

(a) One or more specimens of a person=s breath or blood may be taken if the person is
arrested and at the request of a peace officer having reasonable grounds to
believe the person:

(1) while intoxicated was operating a motor vehicle
in a public place, or a watercraft; or

(2) was in violation of Section 106.041, Alcoholic
Beverage Code.

(b) A peace officer shall require the taking of a specimen of the
person=s breath or blood if:

(1) the officer arrests the person for an offense
under Chapter 49, Penal Code, involving the operation of a motor vehicle or a
watercraft;

(2) the person was the operator of a motor vehicle
or a watercraft involved in an accident that the officer reasonably believes
occurred as a result of the offense;








(3) at the time of the arrest the officer reasonably
believes that as a direct result of the accident:

(A) any individual has died or will die; or

(B) an individual other than the person has suffered
serious bodily injury; and

(4) the person refuses the officer=s request to submit to the taking
of a specimen voluntarily.

(c) The peace officer shall designate the type of specimen to be taken.

(d) In this section, Aserious bodily
injury@ has the meaning
assigned by Section 1.07, Penal Code.

Tex. Transp. Code ' 724.012.  Here,
appellant was under arrest when he was taken to the hospital.  At the time, the
officers believed that Gervais was very seriously injured or that she was dying
or dead as a result of the collision.  Before the mandatory blood draw, Officer
Garza read appellant the statutory warning, known as a DIC-24, which informed
him that he was under arrest for a DWI offense and advised him of the possible
consequences of refusing to give the blood specimen requested.  Appellant
nevertheless refused to consent to give a specimen and refused to sign the
form.  Officer Garza then filled out the statutory authorization form for a
mandatory blood draw, directing the nurse to obtain the blood specimen from
appellant.








Appellant does not address section 724.012=s provisions for
implied consent or contend that the State failed to comply with the statute=s requirements. 
Therefore, appellant=s contention that his expectation of
privacy was violated by the taking of blood samples without his consent is
without merit.[7] 
Further, we note that appellant affirmatively stated that he had no objection
to the admission of the toxicology report from the medical examiner=s office, which
showed his blood alcohol level at 2:35 a.m and 5:02 a.m.  Therefore, to the
extent appellant complains of the admission of such evidence, he has failed to
preserve the error for appeal.  See Moody, 827 S.W.2d at 889; Dean,
749 S.W.2d at 83; Heidelberg, 36 S.W.3d at 672 n.2.  We overrule
appellant=s seventh issue.

VIII.    Whether
the Trial Court=s Judgment Includes an Incorrect
Entry. 

In his eighth issue, appellant contends that the trial
court=s judgment
incorrectly states that appellant used a firearm as a deadly weapon during the
commission of the offense, and requests that the judgment be corrected to
indicate that a motor vehicle was used.  The State concedes that the judgment
is incorrect and also requests that this court reform the judgment to reflect
that the deadly weapon affirmative finding was for a motor vehicle rather than
a firearm.  

We therefore sustain appellant=s issue and order
the judgment reformed to omit the reference to a firearm and to reflect that
the deadly weapon used to commit the offense was a motor vehicle.

Conclusion

We overrule appellant=s issues one
through seven.  We sustain appellant=s eighth issue and
reform the judgment below to reflect  that the deadly weapon used to commit the
offense was a motor vehicle and not a firearm.  We affirm the remainder of the
judgment as reformed.

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment rendered
and Memorandum Opinion filed July 1, 2008.

Panel consists of
Justices Fowler, Frost, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  The driver of the third car in line did not testify
at appellant=s trial.





[2]  In other places in the record, appellant was quoted
as saying, AWhat is that god awful noise?@





[3]  AIntoxicated@ means (A) not having the normal use of mental or
physical faculties by reason of the introduction of alcohol or (B) having an
alcohol concentration of .08 or more.  Tex. Penal Code ' 49.01(2).





[4]  To the extent appellant relies on Richardson v. State, 973
S.W.2d 384 (Tex. App.CDallas 1998, no pet.), to advance
his Areasonable alternative hypothesis,@ we note that the Richardson
court recognized that the Court of Criminal Appeals has abandoned the Areasonable alternative hypothesis@ construct as it applies to a
legal  sufficiency review.  See id. at 386 (citing Geesa v. State,
820 S.W.2d 154, 159 (Tex. Crim. App. 1991), overruled in part on other
grounds by Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000)). 
Consequently, to be legally sufficient, the evidence need not exclude all
reasonable alternative hypotheses. 





[5]  In addition, Officer Garza testified that there did
not have to be anybody in the passenger seat of that model truck for the
passenger airbag to deploy, and Monty Highsmith, the State=s accident reconstruction expert, testified that both
airbags deployed because the passenger side airbag was not suppressed to
prevent deployment.





[6]  Because the trial court did not file findings of fact, we view the
evidence in the light most favorable to its ruling and assume that the trial
court made implicit findings of fact that support its ruling as long as those
findings are supported by the record.  Ross, 32 S.W.3d at 855.  We will sustain the trial court=s decision if it is correct on any applicable theory
of law.  Id. at 855B56.





[7]  In support of his argument that the nurse was
required to get his consent before taking a blood sample, appellant cites a
1966 Attorney General Opinion, No. C-766.  However, appellant does not explain
the relevance of this opinion in light of the legislature=s provisions for implied consent.