Shadrick Clinton HALE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00151–CR.

Court of Appeals of Texas, Texarkana.

Submitted April 28, 2006.

Decided May 9, 2006.

John Delk, II, Texarkana, for appellant.

Tina Richardson, Asst. Dist. Atty., Linden, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Michael Whatley was driving a red Pontiac Firebird at approximately 8:00 p.m. on June 30, 2004, on FM Road 2791 in rural Cass County. Roger Lollar was a passenger in the front seat, and Wendy Riley was a passenger in the back seat. At the same time, Matthew Tolleson and his wife turned onto FM 2791; Lollar thought he knew Tolleson and signaled for the Tollesons to stop. Both vehicles stopped on FM 2791, which apparently blocked the road. In fact, the parties did not know each other, and the drivers began to move their vehicles forward in opposite directions. In the meantime, Shadrick Clinton Hale was driving a gray pickup truck on FM 2791 in the same direction as the Whatley vehicle. Hale came over a hill which was approximately four-tenths of a mile from the point of impact and, ultimately, collided into the rear of the red Pontiac Firebird. Riley was killed in the collision. Hale failed field sobriety tests, and his blood alcohol content was .147 when it was measured, two hours after the accident. There was also evidence that Whatley and Lollar had consumed alcohol. A jury convicted Hale of intoxication manslaughter and assessed punishment at twenty-five years' confinement.[1] The only issue presented in Hale's appeal is whether the evidence is legally and factually sufficient to establish that Hale's intoxication caused Riley's death. We find that it is, and we affirm.

Intoxication manslaughter is committed when a person: (1) operates a motor vehicle in a public place, and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mis- take. TEX. PEN.CODE ANN. § 49.08 (Vernon 2003).

■ Hale argues that there is no evidence his intoxication caused the accident or the death of Riley. Instead, Hale asserts that there were other intervening factors causing the collision, notably the fact that both drivers had been drinking and that the Whatley vehicle was either stopped or moving very slowly in the roadway. The State counters that it is not required to prove that Hale's intoxication is the sole cause of the accident and death and that it must only show that, but for Hale's conduct operating either alone or concurrently with another cause, the accident would not have occurred. *See* TEX. PEN.CODE ANN. § 6.04 (Vernon 2003).

Joshua Mason, a trooper with the Texas Department of Public Safety (DPS), investigated this accident. He conducted an intoxilyzer test on Hale at 10:18 p.m. and measured his blood alcohol content at .147. Whatley's blood alcohol content was .059. Mason conducted field sobriety tests on Hale, and it was Mason's opinion that Hale was intoxicated and that he caused the death of Riley. The Hale vehicle came over a hill on FM 2791 approximately four-tenths of a mile from the impact area. In Mason's opinion, Hale had plenty of time to stop his vehicle. A videotape recording, from Mason's vehicle taken at the scene, was admitted into evidence. On the videotape, a witness told Mason she had seen Hale's vehicle traveling at a high rate of speed just before the collision.

Diane Martin, a technical supervisor for the DPS Breath Testing Program in the area, testified that intoxication impairs the ability to operate a vehicle because of alcohol's depressant effect. Martin testified

---

1. The jury found Hale had previously been convicted of a felony offense causing the punishment to be assessed as a first-degree felo- ny. *See* TEX. PEN.CODE ANN. § 12.42(b) (Vernon Supp.2005).

that intoxication slows the reflexes and decision-making process of a person when attempting to drive. If a person has consumed alcohol, he or she may be unable to stay in the lane of travel or apply the brakes as quickly as needed.

Matthew Tolleson testified he lives near the intersection of FM 2791 and CR 2116. He and his wife, Jasmine Tolleson, had just turned their vehicle onto FM 2791 when they were stopped by persons in the Whatley vehicle. As they began to drive away from the Whatley vehicle, he saw Hale's vehicle come down the hill on FM 2791 and collide into the back of the Whatley vehicle. Tolleson testified that Hale's vehicle was speeding ("[W]hen he came over the hill, he was flying."). Hale drove his vehicle across the center line toward Tolleson's car and then went back over into the other lane and collided with the Whatley vehicle. Jasmine Tolleson agreed that Hale's vehicle was "going pretty fast."

Greg Greer, a certified accident reconstructionist for the DPS, testified that he investigated and diagramed the layout of the scene. He found gouge marks, and used electronic measuring devices to determine distances. He calculated the speed of the Hale vehicle, at the time of impact, based on two scenarios: (1) that the Whatley vehicle was not moving at the time of impact and (2) that the Whatley vehicle was moving at ten miles per hour at the time of the impact. Under these scenarios, Greer determined that Hale's vehicle was traveling at fifty-one miles per hour at the time of impact if the Whatley vehicle was stationary, or forty-four miles per hour at the time of impact if the Whatley vehicle was traveling at ten miles per hour. Greer further testified that Hale applied his brakes and swerved into the left lane and then back to the right lane before striking the red Pontiac. So, Hale was traveling at a higher speed be-

fore attempting to brake and before colliding with the Whatley vehicle. Greer further stated that, if the Whatley vehicle had not been stopped in the roadway, it is his opinion that the accident would have occurred further down the road. Greer testified as follows on cross-examination:

Q. You can't rule out the fact that them being stopped in the road that day caused Ms. Riley's death. In other words, you can take away one fact, Ms. Riley might be living here today.

A. It's a possibility, yes.

 Hale attacks the legal and factual sufficiency of the evidence. The inquiry on review of the legal sufficiency of the evidence to support a criminal conviction is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App.2005). In a factual sufficiency analysis, the evidence is viewed in a neutral light, and we must defer to the fact-finder's determinations, particularly in matters of credibility. *Id.* at 799. The evidence may be deemed factually insufficient either if (1) the supporting evidence, considered alone, is too weak to support the finding beyond a reasonable doubt, or (2) the contravening evidence is so strong that the State could not have met its burden of proof. *Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim. App.2004).

Section 6.04 of the Texas Penal Code sets out the applicable law:

(a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly suffi-

cient to produce the result and the conduct of the actor was clearly insufficient. TEX. PEN.CODE ANN. § 6.04.

Hale correctly asserts the State must prove that his intoxication, not just his operation of a vehicle, caused the fatal result. *See Daniel v. State,* 577 S.W.2d 231, 233–34 (Tex.Crim.App. [Panel Op.] 1979). The existence or nonexistence of such a causal connection is normally a question for the jury's determination. *Thomas v. State,* 756 S.W.2d 59, 61 (Tex. App.-Texarkana 1988, pet. ref'd).

The Texas Court of Criminal Appeals has held that the "but for" causal connection in Section 6.04(a) must be established between the defendant's conduct and the resulting harm. If concurrent causes are present, two possible combinations exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. However, Section 6.04(a) further defines and limits the "but for" causality for concurrent causes by the last phrase, "unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PEN.CODE ANN. § 6.04. If the additional cause, other than the defendant's conduct, is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Robbins v. State,* 717 S.W.2d 348, 351 (Tex.Crim.App.1986). Several other courts have applied these principles to facts similar to this case.

In *Glauser v. State,* 66 S.W.3d 307 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd), an intoxicated driver collided his vehicle into a car that he testified was "stopped in the middle of the highway." *Id.* at 311.

The investigation revealed that one person was outside pushing the vehicle at 2:52 a.m. while another passenger was steering from the driver's side when the intoxicated driver traveling at a high rate of speed collided with the disabled vehicle, killing both the occupant and the person pushing the car. *Id.* at 311–12. The court found the evidence was factually and legally sufficient to find the defendant's intoxication caused the fatalities.

The Dallas Court of Appeals has also addressed a similar issue in *Westbrook v. State,* 697 S.W.2d 791 (Tex.App.-Dallas 1985, pet. ref'd). There, a family was driving back from Six Flags when the defendant's vehicle struck theirs, causing it to flip over a guard rail and killing Bromberg. The issue in that case was the failure of the trial court to charge the jury that, if Bromberg's driving caused the collision by improper change of lane, then the jury should acquit the defendant. In determining this issue, the Dallas court held that, even if the jury found the collision was caused by Bromberg changing lanes, that fact would not have established that the collision was not also caused concurrently by Westbrook's driving at a high rate of speed, his own change of lanes, or his driving while intoxicated. *Id.* at 793. Justice Guittard opined that "causation, being a concept too difficult for lawyers or even for philosophers, is best left to a jury." *Id.*

In Houston, a family was driving home from Houston Hobby Airport when the defendant, driving an eighteen-wheeler, attempted to pass them. The eighteen-wheeler overturned and crushed the family's car, killing all but one child. The defendant did not refute that he was intoxicated, but argued there was no evidence to prove his intoxication caused the deaths. The investigation revealed that the eighteen-wheeler had a defective front steering

axle, some brakes were not working, and the cargo was not secured. Based on these facts, the defendant urged that the cargo shifted while a lane change was being made, causing the trailer to overturn. The Houston court found that such cause was not clearly sufficient to produce the result and that the defendant's intoxication was not clearly insufficient to cause the accident. His driving, while intoxicated, at a high rate of speed "cannot possibly be characterized as being insufficient conduct to cause the accident." *Martinez v. State,* 66 S.W.3d 467, 470 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd).

Here, the facts show that Hale was driving, while intoxicated, at a high rate of speed on FM 2791. There is no dispute he was intoxicated at the time. Expert testimony was presented that driving while intoxicated impairs a person's ability to drive and slows reflexes due to the depressant effect of alcohol. As Hale came over a hill, two vehicles were either parked in the road ahead or were moving slowly. He collided with the Whatley vehicle even though he had four-tenths of a mile to avoid the collision. Clearly, the issue of concurrent causation was presented, even though no request was made to instruct the jury on that issue. We must determine the sufficiency of the evidence based on the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

This case is similar to the ones cited above. In *Westbrook,* the defendant urged that the trial court should have instructed the jury that, if the driver of the other vehicle caused the collision by improperly changing lanes, the defendant should be found not guilty. The Dallas court found that, even if the jury found that the other driver negligently changed lanes, causing the collision, such action would only be a concurrent cause of the collision with the defendant's driving while intoxicated at a high rate of speed, or change of lanes, and was not a defense to the charge of involuntary manslaughter. *Westbrook,* 697 S.W.2d at 793. That court explained that a defense would only be present under Section 6.04 of the Texas Penal Code when the defendant's conduct is clearly insufficient to cause the death and the conduct of the deceased driver was clearly sufficient to cause the death. *Id.*

The facts in *Glauser* are similar in the sense that the deceased was in a disabled vehicle and here the vehicle was either stopped or moving slowly. However, in contrast to the facts of this case, the Glauser collision occurred at night on a busy freeway. One person was apparently pushing a vehicle while another was steering. An intoxicated driver traveling at a high rate of speed overtook the disabled vehicle and collided into it, killing both the driver and the occupant. The Houston court specifically observed that the State was required to prove that the defendant's intoxication, not just his operation of a vehicle, caused the death. With that as the standard, the Houston appeals court found the evidence legally and factually sufficient to affirm the conviction.

It is clear in this case that Hale's conduct in driving a vehicle while intoxicated was not sufficient, by itself, to have caused the harm. The fact that the Whatley vehicle was either stopped or driving very slowly was a concurrent cause of the collision and the resulting death. However, the law recognizes a causal relationship when the defendant's conduct and the other cause together may be sufficient to have caused the harm unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient. Tex. Pen.Code Ann. § 6.04. The facts here do not allow a

conclusion that Whatley's conduct, by itself, in stopping the vehicle on the roadway was clearly sufficient to cause the harm. Without the occurrence of Hale driving his vehicle while intoxicated, at a high rate of speed, Whatley's conduct would not have resulted in Riley's death. Expert testimony confirmed that, when one is intoxicated, he or she is impaired in judgment and reflexes. When the additional element of speed is added, the intoxication of a driver presents even more danger. We find that Hale's conduct in operating the vehicle, while intoxicated, at a high rate of speed, was a concurrent cause of the collision and resulting death.

Based on this finding, we hold that the evidence was legally and factually sufficient to sustain the conviction. We affirm the judgment of the trial court.