

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

Nos. 04-20-00197-CR, 04-20-00198-CR & 04-20-00199-CR

Rosalinda **OLALDE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2019CR2149, 2019CR2151, 2019CR2152
Honorable Jennifer Pena, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:         Rebeca C. Martinez, Chief Justice
                 Luz Elena D. Chapa, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: August 18, 2021

AFFIRMED

Rosalinda Olalde appeals her convictions for intoxication manslaughter and intoxication assault. Her sole point of error challenges the sufficiency of the evidence to support her convictions. We affirm the judgments of conviction.

## BACKGROUND

On August 10, 2018, Olalde was driving a Ford Expedition that collided with a Chevrolet Malibu on an access road running parallel to Texas State Highway Loop 1604, resulting in the death of the Chevrolet's driver and injuries to his four passengers. After the collision, Olalde's

blood alcohol concentration ("BAC") was tested twice and measured 0.18 and 0.14 grams of alcohol per 100 milliliters of blood. The State charged Olalde with criminal offenses in four separate cases. The amended indictments contained five total charges: one charge of intoxication manslaughter and four charges of intoxication assault. Each charge alleged Olalde operated a vehicle in a public place while intoxicated and did so by reason of such intoxication cause the harm alleged—death or serious bodily injury—by accident or mistake, by driving her motor vehicle into another motor vehicle. *See* TEX. PENAL CODE §§ 49.07-.08.

The State consolidated the charges for trial. The jury acquitted Olalde of one of the intoxication assault charges but convicted her of the remaining charges. The jury sentenced Olalde to six years in prison for intoxication manslaughter, to four years for one of the intoxication assault convictions, and to six years' confinement, suspended in favor of community supervision, for the two remaining intoxication assault convictions.

Olalde timely appeals her convictions.

### SUFFICIENCY OF THE EVIDENCE

Olalde contends the evidence was legally insufficient to prove intoxication manslaughter and intoxication assault because the State failed to prove her intoxication was the cause of the collision and resulting harm, and she argues the Due Process Clause of the U.S. Constitution requires this court to reverse the convictions. We disagree.

The Fourteenth Amendment's guarantee of due process requires that no person be convicted of a criminal offense except upon sufficient evidence. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). In reviewing the evidence to determine whether it is legally sufficient to support a conviction, we consider all the evidence in the light most favorable to the prosecution and determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319). In considering the evidence, it is the jury's responsibility to resolve conflicts in the testimony, make credibility determinations, weigh the evidence, and make any necessary reasonable inferences from it. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). If the record supports conflicting inferences, we presume the jury resolved conflicts in favor of the prosecution. *Id.* If the inferences made by the factfinder are reasonable in light of the combined and cumulative force of all the evidence, we will uphold the conviction. *Id.*; *see Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

To present legally sufficient evidence to support the convictions, the State was required to prove beyond a reasonable doubt each element of the offenses of intoxication manslaughter and intoxication assault. A person commits intoxication manslaughter if the person operates a motor vehicle in a public place, is intoxicated, and by reason of that intoxication causes the death of another, by accident or mistake. *See* TEX. PENAL CODE § 49.08(a). A person commits intoxication assault if the person, by accident or mistake, while operating a motor vehicle in a public place while intoxicated, by reason of that intoxication, causes serious bodily injury to another. *Id.* § 49.07(a)(1). A person is "intoxicated" if the person has a BAC of 0.08 or higher. *Id.* § 49.01(2)(B).

Olalde's only contention is the evidence was legally insufficient to prove her intoxication caused the decedent's death and the harm to his passengers. *See* TEX. PENAL CODE §§ 49.07(a)(1), 49.08(a)(2). Olalde concedes the State presented evidence showing she drove a Ford Expedition on the Loop 1604 access road while intoxicated with a BAC of 0.18 and she collided with the Chevrolet Malibu, killing the driver and injuring his passengers.

However, Olalde argues two factors, when viewed "in combination," acted as a concurrent cause of the accident and resulting harm, thereby making her intoxication a clearly insufficient

cause of the harm. Olalde first contends that a silver Dodge Charger collided with her Ford Expedition while she was driving on the Loop 1604 access road, forcing her vehicle to move from the far left lane of the access road to the right lane and onto the sidewalk that paralleled the right lane. She then contends the driver of the Chevrolet Malibu failed to stop or yield before it moved onto the Loop 1604 access road from a private driveway. Olalde contends the accident occurred when the Chevrolet's driver failed to yield the right of way as Olalde was passing the driveway.

The evidence shows Olalde drove the Ford Expedition from the right lane of the Loop 1604 access road onto the sidewalk that paralleled the access road, before returning the vehicle, or at least the front of the vehicle, to the right lane just prior to impact. Olalde's expert at trial, Dr. Eric Moody, explained Olalde had been traveling on the sidewalk for approximately 140 feet "and was reentering the outside travel lane" at the moment of impact.[1]

In support of her theory that a silver Dodge Charger collided with her Ford Expedition, Olalde points to her separate statements to Detective Richard C. Conrad and Officer Jorge Coronado that a gray vehicle collided with hers, causing her to lose control of the Ford Expedition and drive onto the sidewalk. Beyond Olalde's statements to law enforcement, nothing in the record shows any vehicles anywhere near Olalde's Ford Expedition on the Loop 1604 access road immediately before the accident. Detective Conrad testified Olalde, who he said smelled of intoxicants, told him the accident occurred as she exited Loop 1604. However, Detective Patrick Davis testified the Loop 1604 exit located before the scene of the accident, where Olalde's Ford Expedition arguably could have been hit, was "quite a distance" and more than a block from the Loop 1604 access road crash site.

---

[1] Olalde does not dispute the State presented sufficient evidence of the "public place" element of Texas Penal Code, sections 49.07 and 49.08.

Olalde also relies on the testimony of a witness who stated her friend captured the scene in a Snapchat video moments after the accident occurred. The witness took screenshots of that video. The screenshots show the passenger side of a silver vehicle, with no apparent damage, on the access road after the accident. One of the images, because of its angle, provides a partial view of the Ford Expedition. The witness called 911 twice and mentioned a silver Charger and a white Charger in one of the calls. The witness further testified she and her friend agreed they saw a third car, but they did not know what had happened, and they did not witness the accident.

Detective Davis testified paint transfer between colliding vehicles may occur in even minor collisions. He saw no silver/gray paint transfer on the Ford Expedition, but he stated any paint transfer from a collision with a gray vehicle could have been removed by pavement when the Ford Expedition rolled over after colliding with the Chevrolet Malibu. Detective Davis reviewed a nearby Verizon store surveillance video played before the jury and testified he saw no other vehicles around Olalde's vehicle on the access road. He also testified the video depicted a couple of vehicles pulling onto the Loop 1604 access road from a perpendicular side road seconds after the crash, and he identified one of those vehicles as a silver Dodge based on the vehicle's lights, but he was not sure if the model was a Charger. The video, which was admitted into evidence, confirms Detective Davis's testimony. Detective Davis further testified he knew a Dodge Charger had stopped at the scene after the Ford Expedition-Chevrolet Malibu collision. Detective Conrad testified he did not see any evidence indicating the Ford Expedition collided with a silver Dodge Charger before the Chevrolet Malibu collision. Olalde's expert agreed the video showed no vehicles on the Loop 1604 access road, other than Olalde's Expedition, from the time the Expedition first appears on the video and for some time thereafter.

Olalde also contends the decedent drove the Chevrolet Malibu from the private driveway into the right lane of the Loop 1604 access road without stopping or yielding the right of way to

her Ford Expedition. She theorizes that traffic violation caused the collision between the two vehicles. Detective Davis, who conducted an accident reconstruction investigation, testified his review of the Chevrolet Malibu's crash data report (CDR) software recorded the Malibu's speed at zero miles per hour two seconds prior to the collision. He was unable to determine whether the Chevrolet Malibu stopped behind the stop bar on the private driveway and was not sure whether that would have prevented the cars from colliding. Detective Davis further testified the Chevrolet Malibu yielded the right of way to cars on the access road. However, the Ford Expedition was traveling on the sidewalk and only returning to the right lane at the point of impact, and while the front end of the vehicle entered the access road at the time of the collision, the back end of the vehicle had not yet returned to the access road.

The CDR software from the Chevrolet Malibu recorded the Malibu's speed as 11 miles per hour just before it stopped recording because of the collision. Detective Davis determined the Ford Expedition was traveling at a speed of between 74 and 75 miles per hour at the time of the collision—more than 20 miles per hour above the 50 mile-per-hour speed limit.[2] He further testified the distance required for a driver to react to a road hazard and bring her vehicle to a complete stop increases with vehicle speed and an intoxicated person would require an even greater distance to stop her vehicle. Detective Davis's opinion based on his accident reconstruction investigation was that a lack of control of the Ford Expedition caused the collision and this lack of control was caused by Olalde's intoxication.

Olalde's expert found the Chevrolet Malibu's CDR data reliable as to the vehicle's speed. He disagreed with Detective Davis's estimate as to the Ford Expedition's speed; he testified the vehicle was traveling between 56 and 60 miles per hour at the time of impact. He further testified

---

[2] SAPD was unable to obtain CDR data from the Ford Expedition.

the collision would not have occurred if the Chevrolet Malibu had remained stopped behind the stop bar. However, Olalde's expert also testified nothing suggested Olalde drove onto the sidewalk to avoid a collision with the Chevrolet Malibu. But it was possible the decedent drove the Chevrolet Malibu out of the private driveway and onto the access road to avoid a collision with Olalde's Ford Expedition, which was traveling at a high rate of speed on the sidewalk toward the decedent's vehicle. He also acknowledged a driver requiring more time to stop her vehicle would have traveled a greater distance to bring it to a stop.

Olalde argues these factors establish a concurrent cause of the collision and, because they are a concurrent cause, her intoxication was clearly insufficient to cause the collision. The existence or nonexistence of a causal connection is normally a question for the jury. *Martin v. State*, No. 04-13-00483-CR, 2014 WL 2802912, at *1 (Tex. App.—San Antonio June 18, 2014, no pet.) (mem. op., not designated for publication); *Hale v. State*, 194 S.W.3d 39, 42 (Tex. App.— Texarkana 2006, no pet.). Under the Texas Penal Code, "a person is criminally responsible if the result would not have occurred but for [that person's] conduct, operating either alone *or concurrently with another cause*, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor [was] clearly insufficient." *Id.* § 6.04(a) (emphasis added). In other words, if a concurrent cause is present, "two possible combinations exist to satisfy the 'but for' requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause *together* may be sufficient to have caused the harm." *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). However, "[i]f the additional cause, other than the defendant's conduct, is clearly sufficient, by itself, to produce the result *and* the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted." *Id.*; *Walter v. State*, 581 S.W.3d 957, 971

(Tex. App. —Eastland 2019, pet. ref'd) (holding if injuries caused by defendant contributed to death of deceased, he is responsible even though other contributing causes existed).[3]

Viewing the evidence in the light most favorable to the prosecution and assuming the jury resolved any conflicts in the evidence in the verdict's favor, the jury could have reasonably found Olalde's alcohol intoxication—well above the legal limit—caused the death and injuries, alone or concurrently with another cause because she was too impaired to operate her Ford Expedition on a public road, causing her to lose control of the vehicle and collide with the Chevrolet Malibu driven by the decedent. *See* TEX. PENAL CODE §§ 6.04(a), 49.07(a), 49.08; *Pena v. State*, 522 S.W.3d 617, 624-25 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (holding state proved beyond a reasonable doubt defendant's negligence caused victim's death and jury could have reasonably concluded defendant's conduct was alone sufficient to have caused death, regardless of whether concurrent cause existed, or jury might have reasonably believed defendant's conduct and victim's alleged conduct together were sufficient to have caused victim's death); *Martin*, 2014 WL 2802912, at *2 (holding evidence legally sufficient to prove causation by intoxication because evidence showed appellant speeding while intoxicated with BAC over legal limit even if other driver's actions in some way caused collision); *see also Martinez v. State*, 66 S.W.3d 467, 469-70 (Tex. App.—Houston [1st Dist.] 2001, pet ref'd) ("Appellant's conduct, namely, his intoxication combined with the act of driving an 18–wheeler on a public highway above the legal speed limit, cannot possibly be characterized as being insufficient conduct to cause the accident.").

Based on the evidence presented at trial and any reasonable inferences drawn therefrom, the jury could have reasonably concluded Olalde's alleged concurrent cause was not clearly sufficient to have caused the accident. *See Robbins*, 717 S.W.2d at 351. The evidence showed

---

[3] The trial court's jury charge tracked the causation language in Texas Penal Code § 6.04(a).

Olalde's vehicle was not struck by a Dodge Charger (or any other vehicle), and it was her intoxication that caused her to move from the far left lane of the access road to the right lane and ultimately onto the sidewalk, while driving in excess of 20 miles per hour over the speed limit. The evidence also showed the Ford Expedition veered to the right lane because Olalde was intoxicated and not in full command of her mental and physical faculties, and lost control of the vehicle, drove the vehicle onto the sidewalk, and returned the front end of the vehicle to the right lane of the access road just prior to making impact with the Chevrolet Malibu. Olalde's intoxication also lessened her reaction time and prevented her ability to avoid the collision. *See Matamoros v. State*, 500 S.W.3d 58, 64-65 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.) (concluding reasonable factfinder could have found beyond a reasonable doubt that appellant's intoxication caused death where appellant admitted he made too wide of a turn and had collision running into bus stop, officer testified someone in full command of mental and physical faculties while driving within speed limit would have been able to navigate turn, and introduction of alcohol into driver's system was primary factor in causing accident, even if appellant suggested slippery roads caused accident); *Martin*, 2014 WL 2802912, at *2; *Martinez*, 66 S.W.3d at 469-70.

Viewing the evidence in the light most favorable to the prosecution, a rational factfinder could have reasonably concluded Olalde's intoxication caused the decedent's death and the injuries to his passengers. Olalde's lone point of error is therefore overruled.[4]

## CONCLUSION

We affirm the judgments.

Luz Elena D. Chapa, Justice

PUBLISH

---

[4] Olalde also asserts article 1, § 13 of the Texas Constitution requires this court reverse her convictions because the State's evidence is insufficient to support them. Olalde cites no relevant authorities and offers no other discussion or analysis in support of this assertion and thus presents nothing for our review. *See* TEX. R. APP. P. 38.1(i).