COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| MICHAEL LAVELL JACKSON, | | No. 08-07-00061-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 422nd District Court |
| | § | |
| THE STATE OF TEXAS, | | of Kaufman County, Texas |
| | § | |
| Appellee. | | (TC # 23223-422) |
| | § | |

**O P I N I O N**

Michael Lavell Jackson appeals his intoxication manslaughter (Count 1) and tampering with evidence (Count 2) convictions. A jury found Appellant guilty of each offense. Based on Appellant's plea of true, the jury found the enhancement allegation in each count true and assessed punishment at imprisonment for twenty-eight years on the intoxication manslaughter conviction and at imprisonment for twenty-five years on the tampering with evidence conviction. The trial court entered a deadly weapon finding in the intoxication manslaughter judgment. Finding no error, we affirm.

**FACTUAL SUMMARY**

On August 9, 2004 at approximately 2:30 p.m., Charlsie Fletes was traveling 70 m.p.h.[1] on Interstate 20 and preparing to the take the next exit when a Ford F-150 passed and then cut in front of her to take the same exit. The truck cut Fletes short when it moved into her lane. There are warning signs advising that the posted speed limit for the exit ramp is 30 m.p.h. The exit is initially

---

[1] The posted speed limit is 65 m.p.h.

straight, but there is an "S" curve in the roadway before the service road is reached. Fletes slowed down to take the exit and slowed even further upon the seeing the driver of the truck miss the "S" curve. The truck nearly struck a light pole on the left before the driver swerved back to the right. He overcorrected and the truck "kind of tilted" and slammed into a deep concrete culvert. Fletes recalled that it was a hot, sunny day and there was nothing on the roadway which made the road slippery or caused her to lose control.

Fletes stopped to assist and she saw Appellant climb out of the driver's side half-door. Appellant appeared nervous and scared as might be expected and he was attempting to find a number on his cell phone. He told Fletes he had exited because the woman with him needed to use the restroom and could not wait until they got back to Dallas. Fletes looked down into the truck and saw that the woman inside had a cut on her forehead and appeared to be unconscious. Fletes dialed 911 and remained at the scene until after the police and emergency services had arrived and she had given her statement.

Robert Abundez and his wife, Vanessa Morin, were working at the Exxon gas station located near the scene the accident. Abundez was outside painting a sign when he heard a huge noise behind him. He told his wife to call 911 and then ran over to the culvert. The driver emerged and began saying "my baby," referring to the woman still in the truck. Morin walked over to the accident and saw that Appellant was limping and had blood on his leg.[2] After the police and ambulance arrived, Abundez and Morin returned to the Exxon. While the police and emergency services were working, Appellant entered the Exxon and asked if he could use the restroom. The men's restroom was in use so Appellant went into the women's restroom. The police came into the Exxon looking for Appellant and Abundez told them he was in the women's restroom. They told Appellant that he

---

[2] Appellant suffered a broken foot in the accident.

should not have left the accident scene and made him go back outside. No one else had used the women's restroom that day.

Robert Barr and his partner, Anne Atkins, are paramedics employed by East Texas Medical Center, and they were dispatched to the accident. Barr described the damage to the truck as extensive. Photographs show that the front end of the truck was crushed by the impact with the concrete culvert. Once Barr determined that Appellant did not have any life threatening injuries, he climbed down to the truck to check on the passenger, Marilyn Bridges. Bridges had an obvious injury to the right side of her head; she was not breathing and did not have a pulse. Barr climbed back out of the ditch and looked for Appellant but could not find him. When Appellant was located, Barr informed him that the passenger was deceased. Appellant did not seem concerned. Barr subsequently heard Appellant on the phone saying they were going to get Bridges out of the truck and take her to the hospital. Barr again told Appellant that Bridges had died in the accident. While speaking with Appellant, Barr noticed that his pupils were extremely constricted. He had Appellant move into the back of the ambulance where it was darker. Appellant's pupils remained constricted as they had been in the bright light. This indicated to Barr that Appellant might be under the influence of some type of medication or illegal drug and he shared his concerns with the police officers at the scene.

Anne Atkins observed that Appellant was on the telephone a lot and did not want to talk to the paramedics or the police. They told Appellant at least twice that the passenger had died. Each time he would acknowledge it but then he would forget and ask them again.

Joe Hobbs, a Terrell police officer, was one of the first officers on the accident scene. He looked in the truck and saw that the female passenger was not breathing. He immediately began a fatality vehicle crash and possible manslaughter investigation. Hobbs determined that Appellant had

been driving. He got Appellant's driver's license and walked over closer to the vehicle to get information. He wanted additional information from Appellant, but Appellant had left the scene and walked to the Exxon. Hobbs and his supervisor, Myles Hanks, walked over to the Exxon to find Appellant and continue the investigation. Upon learning Appellant was in the restroom, Hobbs heard Appellant talking on the telephone. He knocked on the door and asked Appellant what he was doing. Appellant opened the door and walked past Hobbs. When Hobbs heard the toilet running, he went inside of restroom and saw marihuana swirling around in the toilet bowl as it continued to fill with water. The marihuana was dry and floating on top of the water. Hanks collected the marihuana and bagged it as evidence. When Hobbs returned to the accident scene, Barr told him he suspected that Appellant was under the influence of some kind of drug. Hobbs handcuffed Appellant and transported him to the Medical Center in Terrell for a mandatory blood specimen to be drawn. Appellant's injuries were also treated at the hospital. Leslie Shortnacy drew the blood at 3:50 p.m.

Testing of the blood specimen showed the presence of tetrahydrocannabinol, which is the active component of marihuana, and carboxytetrahydracannabinol, which is a metabolic breakdown product of the parent drug. The presence of tetrahydrocannabinol indicated that marihuana had been ingested within a six hour period before the blood was drawn. In short, Appellant had ingested marihuana sometime between 9:50 a.m. and 2:30 p.m. when the accident occurred.

Scott Kepner is a Terrell police officer trained in accident investigation. He arrived at the accident scene at 2:50 p.m. The amount of damage to Appellant's vehicle indicated that it was traveling at a high rate of speed when it impacted the culvert. Kepner, pointing to the photographs admitted into evidence, described the bend in the roadway as an "S" which was short but not sharp. He observed that Appellant drove into the grass on the left side of the roadway but overcorrected and began sliding sideways before impacting the culvert. Kepner went to the hospital to talk to

Appellant about the accident. Appellant's behavior was unusual in that he fluctuated between emotional and indifferent. With the information available to him, Kepner suspected that Appellant had been using controlled substances and questioned him. Appellant admitted that he had smoked marihuana that morning at 3 a.m. or 4 a.m. Appellant gave Kepner a voluntary written statement. In that statement, Appellant said that the couple decided to stop at the Exxon to use the restroom and then go to the outlet mall. When he exited, there was an area with new pavement which was slick. The truck began sliding and he lost control.

William Kasper is employed by the Texas Department of Public Safety. Three days after the accident, the Terrell Police Services asked him to assist in drawing the accident scene. Using equipment to measure the roadway, Kasper examined the scene and rendered a drawing. Kasper determined that the truck initially went off of the roadway to the left, overcorrected and began sliding sideways before going into the culvert. He found no evidence the truck had braked before the exit and he concluded the driver had taken the exit at an unsafe speed.

Appellant's investigator, Rex Reynolds, examined the exit and roadway and characterized the exit as deceptive because it had a "little dog leg" which could cause a driver to lose control if he was not careful or thinking about it. In his opinion, there was a greater danger if a person was unfamiliar with the exit. He testified that an intoxicated person who was unfamiliar with the exit could have a wreck because of the "dog leg" but added that a sober person or a person who was in a hurry and driving too fast could also have an accident at this exit. On cross-examination, Reynolds testified that he had worked in narcotics and knew that marihuana slowed a person's reflexes. In his opinion, a person who was intoxicated on marihuana and took the exit at 70 m.p.h. placed himself and his passengers in grave danger.

Appellant testified in his own defense. He had never driven on that stretch of I-20 before and

he was unfamiliar with the exit. Bridges told him as they reached the exit that they should stop at the outlet mall so she could buy a gift. He recalled that he was traveling at 60 or 65 m.p.h. and since the speed limit for the exit was 40 m.p.h., he slowed down. When he stepped on his brakes, however, the vehicle began sliding on loose gravel in a newly patched section of roadway. He lost control and went into the culvert. He denied smoking marihuana on the day of the accident and denied telling the officers that he had. When the State attempted to impeach Appellant with a 1997 felony conviction for possession of cocaine, he denied having a conviction. The State utilized fingerprint evidence to prove that Appellant had been convicted of possession of cocaine in 1997.

The jury rejected Appellant's defense and found him guilty of intoxication manslaughter and tampering with evidence as alleged in the indictment. The jury also found that used a deadly weapon, namely, a motor vehicle, during the commission of intoxication manslaughter. Based on Appellant's plea of true, the jury found the enhancement allegation in each count true and assessed punishment at imprisonment for twenty-eight years on the intoxication manslaughter conviction and at imprisonment for twenty-five years on the tampering with evidence conviction. The trial court entered a deadly weapon finding in the intoxication manslaughter judgment.

## BLOOD TEST RESULTS

In Point of Error One, Appellant contends the trial court erred in admitting the blood test results over his objection that Leslie Shortnacy, a graduate nurse, was not qualified to draw the blood. The State responds that Shortnacy is a "qualified technician" within the meaning of Section 724.017 of the Transportation Code. That section provides, in pertinent part, that:

> (a) Only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter.

TEX.TRANSP.CODE ANN. § 724.017(a)(Vernon 1999). The Transportation Code does not define

qualified technician, but subsection (c) provides that "qualified technician" does not include emergency medical services personnel. TEX.TRANSP.CODE ANN. § 724.017(c).

We have not found any reported cases holding that a graduate nurse is a qualified technician under the statute. Courts have held, however, that a phlebotomist is a qualified technician within the meaning of Section 724.017(a) where there is evidence showing the person's qualifications to draw a blood specimen. *See Jessup v. State*, No. 13-02-00024-CR, 2004 WL 2612958 (Tex.App.--Corpus Christi Nov. 10, 2004, no pet.)(not designated for publication)(the evidence showed that phlebotomist was a qualified technician under Section 724.017(a) where the record showed that he was employed as a phlebotomist at the hospital, his job responsibilities included drawing blood, he had successfully completed a course in the drawing of blood and had successfully taken the hospital's checklist test on the drawing of blood, and he was within three months of completing a college course to become a laboratory technician); *Torres v. State*, 109 S.W.3d 602, 606 (Tex.App.--Fort Worth 2003, no pet.)(because no one testified regarding qualifications of person who drew blood and record contained no evidence blood was drawn by someone hospital had determined to be qualified, State failed to prove that person drawing blood was qualified under Section 724.017); *State v. Bingham*, 921 S.W.2d 494, 496 (Tex.App.--Waco 1996, pet. ref'd)(concluding that the term "qualified technician" includes a phlebotomist whom the hospital has determined is qualified to draw blood and whose credentials were made part of the record). *See also Cordero v. State*, No. 08-05-00285-CR, 2007 WL 4724675 (Tex.App.--El Paso 2007, Jan. 17, 2007, pet. ref'd)(not designated for publication)(phlebotomist was a qualified technician). The focus of our inquiry is whether Shortnacy is qualified by the hospital which employed her to draw blood.

Shortnacy had worked at the Medical Center in Terrell for nine years as a certified nursing assistant and she had graduated from nursing school in May of 2004. She was a graduate nurse at

the time she drew Appellant's blood. As a certified nursing assistant, she had been trained to draw blood by the hospital nursing staff and the hospital had a checklist which Shortnacy had successfully completed in order to be allowed to draw blood. Drawing blood had been part of Shortnacy's regular duties for approximately eight years. Her nursing school training and education included a skills lab in which Shortnacy and the other students were trained to draw blood. Shortnacy was familiar with the hospital's procedure for drawing blood and she followed it in this case. Because the evidence showed that Shortnacy had been trained to draw blood and was qualified under the hospital's procedures for drawing a blood specimen, we conclude the trial court did not abuse its discretion by finding that she was a qualified technician under Section 724.017(a) of the Transportation Code. Point of Error One is overruled.

## SUFFICIENCY OF THE EVIDENCE

In Point of Error Two, Appellant challenges the legal and factual sufficiency of the evidence supporting his intoxication manslaughter conviction. More specifically, he argues the evidence is insufficient to prove that he was intoxicated and that by reason of that intoxication caused the death of Marilyn Bridges.

### Standards of Review

In addressing legal sufficiency, we review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), *overruled on other grounds*, *Paulson v. State*, 28 S.W.3d 570 (Tex.Crim.App. 2000). We consider all of the evidence, whether admissible or inadmissible. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999); *Johnson v. State*, 967 S.W.2d 410, 412

(Tex.Crim.App. 1998). We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843. The standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa*, 820 S.W.2d at 158.

In reviewing factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing our review, we are to give due deference to the fact finder's determinations. *See id.* at 8-9; *Clewis*, 922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Thus, the question we must consider in conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See id.*

Under the first prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted

to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id*. Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.*

*Elements of Intoxication Manslaughter*

A person commits intoxication manslaughter if the person (1) operates a motor vehicle in a public place, (2) is intoxicated, and (3) by reason of that intoxication causes the death of another by accident or mistake. TEX.PENAL CODE ANN. § 49.08 (Vernon 2003). "Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. TEX.PENAL CODE ANN. § 49.01(2)(A). Count 1 of the indictment alleged that Appellant was operating a motor vehicle in a public place while intoxicated by reason of the introduction of a controlled substance, a drug, or a dangerous drug into his body and by reason of that intoxication caused the death of Marilyn Bridges.

*Intoxication*

Appellant alleges that the State failed to prove that he was intoxicated. He maintains that while the State's expert witness testified that tetrahydrocannabinol was detected in his blood, she could not state that he was impaired and there is no other evidence of impairment of his mental or physical faculties. Appellant is correct that the blood test results only show the presence of the active component of marihuana. The State's expert testified that, unlike alcohol, there is no way to correlate impairment with the level of any drug detected in the blood specimen. But the State is not

limited to establishing intoxication through expert testimony. Intoxication may be established by circumstantial evidence. *See Smithhart v. State*, 503 S.W.2d 283, 285 (Tex.Crim.App. 1974); *Hernandez Guerreo v. State*, 773 S.W.2d 775, 776 (Tex.App.--Corpus Christi 1989, no pet.). We begin by examining Appellant's driving. Evidence of erratic driving, a collision, failure to apply brakes in order to avoid a collision, and fleeing the scene of the accident is indicative of impaired judgment. *See Chaloupka v. State*, 20 S.W.3d 172, 175 (Tex.App.--Texarkana 2000, pet. ref'd) (erratic driving, a collision, and fleeing scene); *Frohwein v. State*, No. 08-03-00488-CR, 2005 WL 1413210, *6 (Tex.App.--El Paso June 16, 2005, pet. ref'd)(not designated for publication)(erratic driving, failure to apply brakes); *Markey v. State*, No. 14-02-00281-CR, 2003 WL 253299 *2 (Tex.App.--Houston [14th Dist.] February 6, 2003, no pet.)(not designated for publication)(running a stop sign, nearly colliding with another vehicle, then landing in ditch and crashing through fence). Appellant made an admittedly last-second decision to take the exit, he passed another vehicle while driving in excess of 70 m.p.h. and exited without braking until he ran off of the left side of the exit. Both paramedics noted that Appellant's pupils were extremely constricted which can be caused by medication or illegal drugs. Even taking into account the physical and emotional trauma of the accident, Appellant's behavior was unusual in that he swung from being emotional to indifferent and the paramedics had to tell him more than once that Bridges had died. When one of the officers began talking to Appellant and investigating the accident, Appellant walked away when the officer was not looking and attempted to flush marihuana down the toilet. The graduate nurse who drew Appellant's blood smelled a faint odor of marihuana on Appellant's clothes when she drew the blood. At the hospital, Appellant admitted to the officers that he had smoked marihuana early that morning but other evidence showed that Appellant had consumed marihuana between 9:50 a.m. and the time of the accident. When the evidence of impaired judgment is combined with evidence of marihuana

consumption, it is legally sufficient to establish that the defendant did not have the normal use of his mental and physical faculties due to the introduction of marihuana into his body.

Turning to the factual sufficiency analysis, there is evidence that Appellant's speech was not slurred and he did not have poor balance aside from his injured leg. Vanessa Morin testified that Appellant did not seem impaired when he came into the Exxon. On the other hand, Morin seemed to have been more focused on Appellant's injured leg as she mentioned it several times during her testimony. At trial, Appellant denied smoking any marihuana that day but the blood test evidence belied his testimony. And Appellant admitted to the police that he had smoked marihuana that morning. The paramedic Barr noted that Appellant's constricted pupils could also have indicated a head injury, but there was no evidence Appellant suffered one. Appellant testified that he slowed down for the exit and he blamed the accident on a newly patched area of the pavement and loose gravel. Other evidence showed that Appellant took the exit at a high rate of speed and did not apply his brakes until he reached the "S" curve and quickly lost control. Other than Appellant's testimony, there is no evidence that the roadway had undergone recent repairs and Fletes testified that there was nothing on the roadway which made it slippery. Although there is conflicting evidence of intoxication, the evidence of guilt is not greatly outweighed by the contrary evidence. We conclude that the evidence is factually sufficient to support the jury's finding that Appellant was intoxicated by reason of the introduction of marihuana into his body.

### Causation

Appellant also challenges the evidence supporting the jury's finding that his intoxication caused Bridges' death. He argues that the accident could have resulted from the construction of the exit ramp, his unfamiliarity with the road, and his unfamiliarity with the truck he was driving. He reasons that the State failed to prove that intoxication, standing alone, caused the death.

Section 6.04 of the Texas Penal Code provides that:

(a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor was clearly insufficient.

TEX. PENAL CODE ANN. § 6.04(a)(Vernon 2003). The State is required to prove beyond a reasonable doubt that Appellant's intoxication, not just his operation of a vehicle, caused the fatal result. *See Daniel v. State*, 577 S.W.2d 231, 233-34 (Tex.Crim.App. [Panel Op.] 1979). The existence or nonexistence of such a causal connection is normally a question for the jury's determination. *Thomas v. State*, 756 S.W.2d 59, 61 (Tex.App.--Texarkana 1988, pet. ref'd).

The "but for" causal connection in Section 6.04(a) must be established between the defendant's conduct and the resulting harm. *Hale v. State*, 194 S.W.3d 39, 42 (Tex.App.--Texarkana 2006, no pet.). If concurrent causes are present, two possible combinations exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. *Id.* However, Section 6.04(a) further limits the "but for" causality for concurrent causes by the last phrase, "unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.*, *quoting* TEX. PENAL CODE ANN. § 6.04. If the additional cause--other than the defendant's conduct--is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Hale*, 194 S.W.3d at 42, *citing Robbins v. State*, 717 S.W.2d 348, 351 (Tex.Crim.App. 1986).

Taking the evidence in the light most favorable to the verdict, the jury could have found beyond a reasonable doubt that Appellant's intoxication was sufficient by itself to have caused the

accident and Bridges' death.  Alternatively, if the jury found that the construction of the road and Appellant's unfamiliarity with it and the vehicle were concurrent causes along with his intoxication, the evidence does not support a conclusion that the concurrent causes were clearly sufficient by themselves to produce the result or that Appellant's intoxication was clearly insufficient by itself to have caused the result.  Consequently, the evidence is legally sufficient to prove the causal link between Appellant's intoxication and Bridges' death.  *See Hale*, 194 S.W.3d at 44 (where the intoxicated defendant was driving at a high rate of speed and struck two vehicles which were stopped in the middle of a two-lane road and approximately four-tenths of a mile beyond a hill, and where the expert testimony showed that an intoxicated person has slower reflexes such that an intoxicated person driving at a high rate of speed presents a greater danger, the evidence was sufficient to prove that the concurrent causes, namely, the stopped car and the defendant's intoxication, were sufficient together to cause the victim's death); *Glauser v. State*, 66 S.W.3d 307, 313-15 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd)(where intoxicated defendant was traveling at a high rate of speed on a busy highway and struck a car that was nearly stopped in the roadway and killed both the person pushing the vehicle and the one who was steering, and other evidence showed that a person with full command of his mental and physical faculties would have been able to apply his brakes and avoid hitting the disabled vehicle, the court of appeals held that although the stopped car and dark night may have been concurrent causes of the accident, the evidence was legally and factually sufficient to prove that the defendant's intoxication also caused the death of the victims); *Martinez v. State*, 66 S.W.3d 467, 470 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd)(where the intoxicated defendant was driving an eighteen wheeler above the speed limit and overturned while passing the victims' car killing all but one of the occupants, the court of appeals found that even though the accident may have also been caused by the eighteen wheeler's defective front-steering axle, a shifting

load, and defective brakes, the evidence was legally and factually sufficient to show that his intoxication, combined with driving an eighteen wheeler above the legal speed limit, caused the deaths) .

We have also examined the evidence relevant to causation under the factual sufficiency standard. The evidence establishing that Appellant's intoxication alone caused the accident is not too weak to support the jury's finding on the causation element. Assuming that the jury found that the other causes cited by Appellant were concurrent causes, the evidence does not support a conclusion that the concurrent causes were clearly sufficient by themselves to produce the result or that Appellant's intoxication was clearly insufficient by itself to have caused the result. Thus we conclude that the evidence was factually sufficient to support the jury's determination that Appellant's intoxication caused the accident and Bridges' death. We overrule Point of Error Two.

## DEADLY WEAPON FINDING

In Point of Error Three, Appellant challenges the legal and factual sufficiency of the evidence supporting the deadly weapon finding because no witness specifically testified that the truck was a deadly weapon. Section 1.07 of the Texas Penal Code defines "deadly weapon" as meaning "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(17)(B)(Vernon Supp. 2008). The Court of Criminal Appeals has recognized that anything, including a motor vehicle, which is actually used to cause the death of a human being is a deadly weapon. *Tyra v. State*, 897 S.W.2d 796, 798 (Tex.Crim.App. 1995); *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex.Crim.App. 1992). This is necessarily so because a thing which actually causes death is by definition, "capable of causing death." Tyra, 897 S.W.2d at 798. The State is not required to offer expert testimony to prove that an object is a deadly weapon. *Brown v. State*, 716 S.W.2d 939, 946 (Tex.Crim.App. 1986); *Davidson v. State*, 602

S.W.2d 272, 273 (Tex.Crim.App. [Panel Op.] 1980); *Denham v. State*, 574 S.W.2d 129, 131 (Tex.Crim.App. 1978).

The evidence, taken in the light most favorable to the verdict, shows that Appellant was operating his truck while intoxicated and at a high rate of speed when he lost control on an exit ramp and slammed into a concrete culvert, killing his passenger even though she was wearing her seat belt and the air bag deployed. This evidence is legally sufficient to show that the truck, in the manner of its use, was capable of causing death. *See Tyra*, 897 S.W.2d at 798.

The evidence is also factually sufficient to sustain the deadly weapon finding. Appellant argues that it was the condition of the roadway which caused the accident rather than his operation of the vehicle, and therefore, he did not "use" the vehicle in a deadly manner. While there is evidence that the "S" curve may have been a concurrent cause of the accident, we cannot ignore the evidence showing that Appellant was intoxicated and driving his truck at a high rate of speed in excess of the speed limit when he lost control of the vehicle. We conclude that the evidence is factually sufficient to prove that the truck, in the manner of its use, was capable of cause death. Point of Error Three is overruled.

### TAMPERING WITH EVIDENCE

In his fourth point of error, Appellant challenges the legal and factual sufficiency of the evidence supporting his tampering with evidence conviction. A person commits the offense of tampering with evidence if, knowing that an investigation or official proceeding is pending or in progress, he alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. TEX.PENAL CODE ANN. § 37.09 (Vernon Supp. 2008). The indictment alleged that Appellant intentionally or knowingly destroyed or concealed evidence, to-wit: marihuana, with intent to impair its availability

as evidence in the investigation that was pending regarding the death of Marilyn Bridges. The application paragraph of the court's charge inquired whether the evidence proved beyond a reasonable doubt that Appellant had intentionally or knowingly destroyed or concealed evidence to-wit marihuana, with intent to impair its availability as evidence in the investigation that was pending regarding the death of Marilyn Bridges.

Appellant argues that an intoxication manslaughter offense was not pending when he attempted to flush the marihuana. He directs us to *Pannell v. State*, 7 S.W.3d 222 (Tex.App.--Dallas 1999, pet. ref'd) in support of his argument. There, the Dallas Court of Appeals held that the evidence was legally insufficient to support the defendant's conviction of tampering with evidence where the defendant threw marijuana out of his car window when the police were attempting to pull him over for speeding. *Pannell*, 7 S.W.3d at 223. The court found that Section 37.09 requires the defendant be aware that the thing he altered, destroyed, or concealed was evidence in the investigation as it existed at the time of the alteration, destruction, or concealment. *Id.*

Appellant's argument is without merit for two reasons. First, the State was not required to prove that the officers had determined they would file criminal charges against Appellant for intoxication manslaughter at the time he destroyed the marihuana. The indictment alleged that Appellant destroyed the marihuana while an investigation into Marilyn Bridges' death was pending. Second, the instant case is distinguishable from *Pannell* because, contrary to Appellant's assertion, there is evidence that the police officers had begun investigating the accident resulting in Bridges' death at the time Appellant went to the Exxon and attempted to flush the marihuana. Officer Joe Hobbs was one of the first officers on the accident scene and, after seeing that Bridges was not breathing and apparently deceased, he immediately began a fatality vehicle crash and manslaughter investigation. He determined Appellant had been driving and began obtaining information from

Appellant, including his driver's license. Appellant left the scene when Hobbs walked over to the vehicle. The investigation into the cause of the accident remained pending at the time Appellant left the scene. Thus, the evidence is legally sufficient to show that Appellant knew that an investigation into the accident and Bridges' death was pending when he attempted to flush the marihuana.

There is no evidence contradicting or impeaching Hobbs on this issue. Even Appellant, in his own testimony, failed to address what he knew about the pending investigation or why he flushed the marihuana down the toilet. We conclude that the evidence supporting this element is not too weak to support the jury's finding of guilt. We overrule Point of Error Four and affirm the judgment of the trial court.

June 3, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)